**Federal Defenders**
OF NEW YORK, INC.

Eastern District
One Pierrepont Plaza, 16th Fl., Brooklyn, NY
11201 Tel: (718) 330-1200  Fax: (718) 855-0760

---

Tamara L. Giwa
*Executive Director and*
*Attorney-in-Chief*

Michelle A. Gelernt
*Attorney-in-Charge*

The Honorable Orelia E. Merchant
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

October 1, 2025

Re: <u>United States v. Mitchell Bostic, 24 CR 126 (OEM)</u>

Dear Judge Merchant:

  Mitchell Bostic was convicted of one count of Attempted Hobbs Act Robbery and stipulated to a second attempted robbery pursuant to U.S.S.G § 1B1.2(c). He faces no mandatory minimum and a statutory maximum of 20 years. According to the PSR, he faces an advisory Guidelines range of 108 to 135 months, a range which treats the stipulated offense as though he were convicted of it. The defense has no objection to this calculation.

  The defense respectfully submits a sentence of 108 months – nine years -- is sufficient but no greater than necessary to meet all the purposes of sentencing. 18 U.S.C. § 3553(a). A sentence at the bottom of the Guidelines almost always satisfies all the statutory sentencing requirements and surely does so here. A nine-year sentence is a long one and takes account of all the aggravating factors. Mr. Bostic is 52 years old and has some of the most significant health issues imaginable. He separately faces a parole violation in New York State, where he is on lifetime parole. Simply put, he will be lucky if he gets out of prison alive and if he does so will not represent a threat to the community.

**<u>Personal History</u>**

  Mr. Bostic has spent more of his 52 years on this planet in custody than at liberty. Sadly, there is nothing particularly surprising about this given his background. He grew up in Brownsville, Brooklyn, at a time when that neighborhood was among the most dangerous in New York City. His mother abused cocaine during his childhood, and by the time he was just four years old, he was already witnessing shootings and other forms of violence in his housing complex. Brownsville in the 1980s and early 1990s had the highest concentration of public housing in the country, and during the crack epidemic it became synonymous with concentrated poverty, drug markets, and daily gunfire. In 1992—the year Mr. Bostic turned 19—the city recorded 1,995 homicides, compared to 377 last year, and Brownsville's 73rd Precinct was one of the hardest hit. This was the environment in which Mr. Bostic came of age, where walking to school could mean crossing gang territory, and stairwells and courtyards were places of constant threat; in

other words, violence was completely normalized. His teen years coincided with the peak of the crack epidemic and the peak of violent crime in New York, and tragically, he was pulled into that mayhem. At age 19, he received a 25-years-to-life sentence for a 1992 murder. He served 27 years before being paroled in 2019.

**A History of Addiction Leading to the Current Offense Conduct**

Mr. Bostic developed an opiate addiction while on parole and shoplifted from what are commonly referred to as dollar stores to support his habit. His addiction escalated to the point where he was using multiple times a day, and ultimately led to the instant offenses. During the offense of convictions (Count 2), he was confronted while shoplifting from a dollar store and swiped a blade at a store employee in an effort to get away. Thankfully, she does not appear to have been badly hurt; the defense understands the victim received stitches. In the other incident, he shot a store employee at another dollar store while appearing to be in a drug-induced stupor. The Probation Department notes that his substance abuse history may have been a contributing factor in the offense conduct and that the Court may consider this mitigating. (PSR 104.)

While at the MDC, Mr. Bostic has had to grapple with his addiction. Though placed in drug treatment by his parole officer prior to the offense conduct, Mr. Bostic was unsuccessful. The very real symptoms of opiate withdrawal were too great for him to withstand. For the first time in his life, while at the MDC, Mr. Bostic has been placed on medication assisted treatment. He receives suboxone for his severe opioid dependency (PSR 74). Mr. Bostic reports that this medication has helped him greatly, allowing him to detox and making long-term sobriety feel sustainable. For the first time in many years, he is able to think clearly and rationally, and his decision making is no longer guided by the singular desire to get high. He now recognizes the very serious harm his addiction brought on the community, and in particular, the victims of his offense conduct, and is deeply regretful for his actions. When eventually released, Mr. Bostic intends to remain on medication assisted treatment to ensure that he does not travel down a destructive path again.

**Personal Growth and Aging in Prison**

Mr. Bostic was not a young man when he committed this crime but will be significantly older when -- and if -- he gets out, reducing the risk of recidivism. Statistics indicate that offenders who enter prison in their fifties reoffend at significantly reduced rates.

Experts in the field, including the National Institute of Corrections, have determined that 50 is the appropriate mark for when an incarcerated person is considered "elderly" or "aging," due to lack of access to appropriate health care prior to incarceration and the severe toll that incarceration has on people's physical health.[1] For Mr. Bostic, who is already struggling with serious health issues, and has spent the majority of his life in prison, this is even more true. It is well-documented that those who fit into the category of "elderly prisoners" are the least dangerous group of incarcerated individuals.[2]

---

[1] See *At America's Expense: The Mass Incarceration of the Elderly* (June 2012) at https://www.aclu.org/files/assets/elderlyprisonreport_20120613_1.pdf.
[2] See *Why Are We Spending So Much To Lock Up Elderly Prisoners Who Pose Little Threat?* (June 13, 2012) at https://www.aclu.org/blog/smart-justice/parole-and-release/why-are-we-spending-so-much-lock-elderly-

In a longitudinal study, researchers examined crime patterns of men who were career criminals from age 7 through age 70.[3] The authors of the study found that, even when looking at groups with distinct individual differences such as family support and access to substance use treatment, age was a decisive, unifying factor in starkly decreasing crime rates across the board.[4]



Mr. Bostic's conduct at the MDC is a good indicator that he has changed. He had an abysmal disciplinary history while in state prison but has had a single infraction – not for a weapon or fight but rather for an unauthorized item, specifically, eye glasses -- resulting in loss of commissary only in his 18 months at the MDC. (PSR 66.). Further, he has embraced programming to better himself, completing classes in stress-management, the arts, and personal health. (Exhibit A, Certificates). Most notably, Mr. Bostic has completed Focus Forward, a re-entry readiness program with an educational curriculum, run by an external non-profit coordinator. Mr. Bostic graduated from the 13-week program (Ex. A), and clearly embraced everything Focus Forward had to offer, as the annexed letter from Hannah Jopling, the facilitator of his class, indicates:

> As a participant of Focus Forward, Mitchell Bostic demonstrated persistent attentiveness and reliability. He always came to class prepared to engage in the discussions about the skill of the week, the journal topic, and the reading assignment ….
>
> Mitchell shared his future plans with us during the program. He indicates that he wants to learn a trade, eventually maintain a small apartment building, and offer youth vocational training opportunities through a youth center to help troubled young people. …
>
> The members of the class benefited from Mitchell's participation. He was a steadying influence in the classroom. As a facilitator, I appreciated having Mitchell in the class and the opportunity to get to know such a reflective person.

---

prisoners-who-pose; *see also Aging in Prison: Reducing Elder Incarceration and Promoting Public Safety* (November 2015) at https://www.issuelab.org/resources/22902/22902.pdf.
[3] Sampson, R.J., & Laub, J.H. (2003). Life-course desisters? Trajectories of crime among delinquent boys followed to age 70. *Criminology*, 41(3), 301-340.
[4] *Id.* at 311 (Figure 1).

(Exhibit B, Focus Forward Letter). Mr. Bostic hopes to carry the lessons learned through Focus Forward with him throughout his term of incarceration and when eventually released.

Further, the financial burden on the public for incarcerating Mr. Bostic beyond 108 months far outweighs any miniscule deterrent or public safety effect it may have. According to the National Institute of Corrections, it costs almost double the amount to incarcerate "elderly" people than younger individuals, due to their health issues.[5]

### **A Nine-Year Sentence Is Sufficient to Meet all of the Statutory Sentencing Factors.**

The defense recognizes the gravity of Mr. Bostic's crime as well as his significant history. For this reason, we are not seeking any sort of variance based on his health or drug addiction but rather, a bottom-of-the-Guidelines term.

The Guidelines are the "starting point" and "initial benchmark" for any sentencing proceeding. *Gall v. United States*, 552 U.S. 38, 49 (2007). "[D]istrict courts *must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Id,* at 50, n. 6 (emphasis added). They are so important that improperly calculating the correct Guidelines range constitutes procedural error. *Id.* "[I]n the *overwhelming majority* of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Alcius*, 952 F.3d 83, 88 (2d Cir. 2020) (emphasis added, quotation omitted).

A Guidelines sentence, indeed one at the bottom of the range, is surely sufficient and reasonable here. The Guidelines take into account all of the aggravating factors in this case, including that weapons were used, including the discharge of a firearm; that serious injuries were suffered; and that he committed two distinct crimes. Mr. Bostic receives additional points for all of this. His Criminal History Category recognizes that he is no first-time offender as well. Meanwhile, the Guidelines take no account of his age or health or the likelihood of a separate term for his violation of parole.

Accordingly, the bottom of the Guidelines range is plainly sufficient. The defense respectfully requests a sentence of 108 months.

Respectfully submitted,

/s/
Michael D. Weil
Kathryn Wozencroft
Assistant Federal Defenders
(718) 330-1200

CC:   AUSA Michael Gibaldi
      AUSA Megan Larkin
      Probation Officer Alexandria M. Lohwasser

---

[5] *See Correctional Health Care: Addressing the Needs of Elderly, Chronically Ill, and Terminally Ill Inmates* (February 2004) at https://nicic.gov/correctional-health-care-addressing-needs-elderly-chronically-ill-and-terminally-ill-inmates.